Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Nov 12 2013, 5:33 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES D. CRUM**
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN R. TYRRELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1301-PC-11 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
Cause Nos. 29D02-1111-PC-16469, 29D02-0703-FA-31

**November 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

John R. Tyrrell appeals the denial of his petition for post-conviction relief. The sole issue for our review is whether the trial court erred in denying his petition. We affirm.

FACTS AND PROCEDURAL HISTORY

In January 2006, thirteen-year-old P.C., who lived with her family in Fishers, began corresponding online with thirty-year-old Tyrrell, who lived in South Carolina. During the course of their correspondence, Tyrrell, who knew that P.C. was only thirteen years old, initiated graphic sexual conversations and told her that he wanted to engage in both oral and vaginal intercourse with her. In February 2006, Tyrrell told P.C. that he would be passing through Indiana on his way to a new job in Minnesota and could meet her at her house.

On February 6, 2006, P.C. told her mother that she was sick, and her mother allowed her to stay home from school by herself while her parents were at work. Tyrrell called P.C. from a nearby payphone at 10:00 a.m. and arrived at her house shortly thereafter. Tyrell and P.C. went to P.C.'s bedroom where they engaged in numerous acts of vaginal and oral intercourse. At about noon, a cleaning service rang the doorbell at P.C.'s house. P.C. ignored the doorbell until her mother telephoned her and told her to open the door and let the cleaning people in the house. While P.C. opened the front door, Tyrrell left out the back door.

The following day at school, P.C.'s class watched a movie about someone "who got cervical cancer from having sex at age 13." Transcript at 238. P.C. "freaked out," and told her best friend what she had done with Tyrrell. Id. P.C. also contacted Tyrrell

2

and expressed concern about whether he had any sexually transmitted diseases. Tyrrell told P.C. to stop worrying and that he hoped to see her again "before summer and hopefully uninterrupted this time." State's Exhibit 22a. In another online message, Tyrrell told P.C., "sorry I had to jet out on you so quick. You're great." Id.

The following year, in February 2007, P.C. told her school counselor and parents what had happened with Tyrrell. Although P.C. only knew Tyrrell's first name, the police were able to identify and locate him based on information provided by P.C. and computer evidence. The ensuing police investigation confirmed that Tyrrell transferred to Minnesota and began a new job in February 2006. His bank records showed a series of transactions tracing his route from South Carolina to Minnesota, including a transaction at a gas station in Danville, Illinois. School records confirmed that P.C. was absent from school on February 6, 2006, and a cleaning service confirmed that they arrived at P.C.'s house at approximately 11:45 on February 6. Phone records for P.C.'s home showed an incoming call to her house at 9:52 a.m. on February 6 from a payphone located a few blocks from her house.

The State charged Tyrrell with two counts of child molesting, one as a class A felony and the other as a class C felony. The probable cause affidavit stated that Tyrrell arrived at P.C.'s house at approximately 10:00 a.m., and was there for two to three hours. Before trial, defense counsel filed a Notice of Alibi Defense stating that during the charged date and time, Tyrrell was driving from South Carolina to Minnesota. Specifically, defense counsel alleged that on February 6, 2006 at 12:32 p.m., Tyrrell was at a gas station in Danville, Illinois.

At trial, the State offered the receipt from the Danville gas station into evidence. The State also presented evidence that on February 6, 2006, Danville, Illinois was on central time so that when it was 12:32 p.m. in Danville, it was 1:32 in Fishers, which would have given Tyrrell sufficient time to drive from P.C.'s house to the gas station in Danville. Tyrrell testified that he left South Carolina on February 5, 2013, and drove straight through to Minnesota, stopping only for gas and snacks. He admitted corresponding online with P.C. but denied engaging in sexual intercourse with her or having ever seen her in person before the trial.

The jury convicted Tyrrell of both counts. Tyrrell initiated a direct appeal and then received permission to return to the trial court for a post-conviction proceeding pursuant to the Davis/Hatton procedure.[1] Tyrrell's sole argument in his post-conviction petition was that his trial counsel was ineffective because she failed to investigate his alibi defense. Specifically, according to Tyrrell, when counsel disclosed Tyrrell's credit card receipt from the Danville gas station, counsel failed to realize the time zone difference between Indiana and Illinois. Counsel therefore provided documentary evidence to the State, which allowed the State to prove Tyrrell could have been in Fishers at the time of the crime. The post-conviction court concluded that it did not need to determine whether counsel's "action caused the representation to fall below an objective level of reasonableness because the Petitioner has not satisfied his burden to show prejudice." Appellant's Appendix at 301. Specifically, the trial court explained that it could not say that the "discovery and presentation of the gas station receipt, even if it

---

[1]  See Davis v. State, 267 Ind. 152, 368 N.E.2d 1149 (1977); Hatton v. State, 626 N.E.2d 442 (Ind. 1993).

4

were unprofessional conduct, undermines the Court's confidence in the outcome of trial. The Petitioner has not met his burden in proving otherwise." Id. Tyrrell appeals the denial of his petition.

## DISCUSSION

The issue is whether the post-conviction court erred in denying Tyrrell's petition for post-conviction relief. In reviewing the judgment of a post-conviction court, this court considers only the evidence and reasonable inferences supporting its judgment. Hall v. State, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. Id. at 469.

Here, Tyrrell argues that the post-conviction court erred in denying his petition because his trial counsel was ineffective. To establish a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel performed deficiently and the deficiency resulted in prejudice. Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009). If we can dismiss an ineffective assistance of counsel claim on the prejudice prong, we need not address whether counsel's performance was deficient. Id. Rather, we may proceed to evaluate whether the alleged error rendered the result of petitioner's trial fundamentally unfair or unreliable. Cooper v. State, 687 N.E.2d 350, 353 (Ind. 1997). When making

this evaluation, we consider the totality of the evidence, taking into account the effect of the alleged error. Id.

We find the prejudice issue in this case to be dispositive and therefore do not address the alleged deficiency in trial counsel's performance. Specifically, our review of the evidence reveals that the police located Tyrrell based on P.C.'s information and computer evidence. Tyrrell admitted that he corresponded with P.C. online. The evidence revealed that in early February 2006, Tyrrell was traveling from South Carolina to Minnesota. At approximately 10:00 a.m., Tyrrell telephoned P.C. from a pay phone near P.C.'s house. Tyrrell went to P.C.'s house where he and P.C. engaged in sexual acts until the cleaning company arrived at the house. P.C. ignored the initial knock, but when her mother called and told her to open the door for the cleaning company, Tyrrell slipped out the back door and continued on to Minnesota.

The following day, P.C. became upset at school after seeing a video about a girl who had sexual intercourse at age thirteen and contracted a sexually transmitted disease that led to cancer. P.C. told her best friend what she had done and contacted Tyrrell to be sure he did not have any sexually transmitted diseases. Tyrrell told P.C. that he hoped to see her again "before summer and hopefully uninterrupted this time." State's Exhibit 22a. In another online message, Tyrrell told P.C., "sorry I had to jet out on you so quick. You're great." Id. Based upon this evidence, there is no reasonable probability that the result of the trial would have been different had the credit card receipt never been admitted into evidence. Tyrrell has failed to meet his burden to show that the evidence as

a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

For the foregoing reasons, we affirm the post-conviction court's denial of Tyrrell's petition for post-conviction relief.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.