## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2020, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Deputy Public Defender
Anthony S. Churchward, P.C.
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Josiah Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rian N. North,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 10, 2020

Court of Appeals Case No.
19A-CR-2698

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D05-1809-FA-10

**Baker, Judge.**

[1] Rian North appeals his convictions for three counts of Child Molesting[1]—two as Class B felonies and one as a Class C felony. North makes the following arguments: (1) his right to a speedy trial under Criminal Rule 4(B) was violated; (2) the trial court erroneously refused to admit certain evidence; and (3) the sentence is inappropriate in light of the nature of the offenses and his character. We affirm.

## Facts

[2] In 2012, M.S. was eight years old and lived with her mother, stepfather (North), and siblings. One day in 2012, North called M.S. up to the attic and got on top of her. North removed her pants and underwear. M.S. watched him place an "orange condom on his penis" before she closed her eyes. Tr. Vol. II p. 44. He penetrated her vagina with his penis, causing M.S. to have the "terrible feeling" of "not even being able to fight for myself" as he raped her. *Id.* M.S. later told her mother what had happened, and her mother told her not to tell anyone. North remained in the home. M.S.'s mother and North both began physically abusing her because she had disclosed what had happened. On one occasion, North made her pull down her underwear and "whoop[ed]" her bare buttocks with a belt. *Id.* at 47.

[3] In 2014, when M.S. was ten years old, North was home with M.S. while her mother was at work. He pulled his penis out of his pants, telling her, "this is

---

[1] Ind. Code § 35-42-4-3.

what you get for telling your mom." *Id.* at 48. He inserted his penis into her mouth until he ejaculated. M.S. was able to later describe in detail what the experience was like.

[4] At some point in her early teenage years, M.S. began smoking marijuana and lived in multiple shelters. She attempted suicide in 2017 and later disclosed the molestations to a probation officer in 2018. The probation officer notified the Department of Child Services and law enforcement.

[5] On September 25, 2018, the State charged North with three counts of child molesting. On October 10, 2018, North was appointed counsel and requested a speedy trial. The trial court set a trial date of December 12, 2018; on December 12, the trial court entered a finding that the docket was congested and reset North's trial to January 24, 2019, over North's objection. On January 3, 2019, North filed a motion to continue through his counsel; the trial court reset the trial to June 12, 2019. On May 20, 2019, North filed another motion to continue through his counsel; the trial court reset the trial to September 4, 2019. On August 26, 2019, North filed another motion to continue.[2] The State objected, and the trial court denied the motion.

[6] At North's September 4, 2019, jury trial, forensic interviewer Lorrie Freiburger testified that M.S. had described "sensory details," which "are details about an

---

[2] North had been released on bond on July 9, 2019, and requested more time because he was better able to access social media and investigate his defense upon his release.

event, in this case sexual, that somebody would have no knowledge of unless they had occurred to them." *Id.* at 130. She explained that examples of sensory details could include the color of a condom; the taste, texture, and color of bodily fluid; physical body positions "that a child wouldn't know unless they were physically in those positions"; and the placement of hands during sexual activities. *Id.* During cross-examination, North's counsel asked Freiburger whether, "as a fourteen (14) year old you can't say if there was any other place she could've gained this knowledge?" *Id.* at 132.

[7] The State objected, arguing outside the presence of the jury that this question sought to elicit testimony that would violate Evidence Rule 412, which bars evidence about a victim's sexual history. The trial court sustained the objection, observing that the question implied that M.S. would know these details because of events in her life that would be inadmissible under Evidence Rule 412. North's counsel explained that he planned to argue that she could have learned the sensory details of the encounters with North from "the internet, TV, any sorts of friends[.]" *Id.* at 133. The trial court stated, "Well you can certainly make that argument, but that's not where you were going with that." *Id.* North responded, "Okay. I'm not going any further obviously." *Id.* In closing argument, North's counsel argued that the sensory details M.S. had described could have come from another source because a fourteen-year-old could have watched television, accessed the internet, or attended a sexual education course in school. Ultimately, the jury found North guilty as charged.

On October 25, 2019, the trial court imposed an aggregate sentence of thirty-six years—consecutive terms of fifteen years for each of the two Class B felonies and six years for the Class C felony. North now appeals.

# Discussion and Decision

## I. Speedy Trial

First, North argues that because his trial occurred outside of the seventy-day speedy trial window, his right to a Criminal Rule 4 speedy trial was violated and we should reverse.

Criminal Rule 4(B)(1) provides, in pertinent part, as follows:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

*See also Logan v. State*, 16 N.E.3d 953, 958 (Ind. 2014) (noting that Criminal Rule 4 challenges are separate and distinct from review of claimed violations of constitutional speedy trial rights).

Failure to move for discharge prior to trial constitutes a waiver of that right to discharge. *Buza v. State*, 529 N.E.2d 334, 336-37 (Ind. 1998). Indeed, waiver results even when the defendant makes a general objection to a trial date set beyond the seventy-day limit. *Sholar v. State*, 626 N.E.2d 547, 549 (Ind. Ct.

App. 1993). Here, North did not move for discharge. Consequently, he has waived this argument.

[12] Waiver notwithstanding, North's rights under Criminal Rule 4(B) were not violated because all the delays were caused by congestion or North's requests for continuances.[3] Furthermore, North was released from custody before his trial. *See Driver v. State*, 725 N.E.2d 465, 470 (Ind. Ct. App. 2000) (holding that the requirement for a speedy trial to occur within seventy days is extinguished when a defendant is released on bond). Therefore, his speedy trial rights were not violated and he was not entitled to be discharged.

## II.  Admission of Evidence

[13] Next, North argues that the trial court erred by refusing to permit him to question the forensic interviewer about other ways in which M.S. might have acquired the knowledge of the sensory details of her encounters with North. The admission of evidence is a matter within the trial court's discretion. *E.g.*, *Pribie v. State*, 46 N.E.3d 1241, 1246 (Ind. Ct. App. 2015). We will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

---

[3] North argues that he did not *personally* request the continuances. But acts of counsel are viewed as acts of the defendant for Criminal Rule 4 purposes. *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). In any case, because North was released from custody before trial, his protections under Criminal Rule 4(B) were extinguished.

Evidence Rule 412(a) provides that "evidence offered to prove that a victim . . . engaged in other sexual behavior" is inadmissible in a criminal proceeding involving alleged sexual misconduct.[4] Here, the trial court sustained the State's objection to the following question North's counsel asked of the forensic interviewer: "But as a fourteen (14) year old you can't say if there was any other place she could've gained this knowledge [of sensory details]?" Tr. Vol. II p. 132-33. To the extent that this question would have elicited testimony regarding M.S.'s sexual history, the trial court did not err by refusing to permit it, as it is squarely covered by Evidence Rule 412(a).

To the extent that North argues that he intended to elicit testimony that M.S. may have known about the sensory details through television, the internet, or social media, the trial court did not prohibit this argument or even prevent counsel from asking questions along these lines. *Id.* at 133. And in fact, North made this precise argument as part of his closing. Consequently, he can show no prejudice as a result of the trial court's ruling.

In sum, the trial court did not err by sustaining the State's objection to the question, North's counsel did not inquire further of the witness along permissible lines, and in any event, counsel was able to make the argument he planned to make as part of closing. Therefore, North is not entitled to reversal on this basis.

---

[4] There are certain exceptions to this rule that are not applicable in this case. Evid. R. 412(b)(1).

# III. Appropriateness

[17] Finally, North argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character pursuant to Indiana Appellate Rule 7(B). We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[18] North was convicted of two Class B felonies and one Class C felony. For each Class B felony, he faced a term of six to twenty years, with an advisory term of ten years. Ind. Code § 35-50-2-5(a). For each Class B felony conviction, the trial court imposed a sentence of fifteen years—above the advisory but less than the maximum. For the Class C felony, he faced a term of two to eight years, with an advisory term of four years. I.C. § 35-50-2-6(a). The trial court imposed a term of six years—above the advisory but less than the maximum. Had the trial court imposed consecutive maximum terms, North would have received an aggregate forty-eight-year term. Instead, the trial court imposed consecutive terms of fifteen, fifteen, and six years, totaling thirty-six years imprisonment.

[19] With respect to the nature of the offenses, North repeatedly molested his young stepdaughter, thereby abusing his position of trust and authority. He also

retaliated against her for telling her mother what had happened, whipping her with a belt and forcing her to fellate him as punishment. These acts, causing her to live in fear for years, went above and beyond the elements of the offenses.

[20] As to his character, while he had no criminal history prior to molesting M.S., he was convicted of Level 6 felony domestic battery after he molested her.[5] Additionally, his probation was revoked in that case. We also find that his acts of retaliation against M.S. further evidence his poor character.

[21] It may well be that this case is not the worst of the worst. But the trial court did not impose consecutive maximum terms. Instead, the trial court appropriately acknowledged the heinousness of these crimes, including their severe and long-lasting effects on M.S., and North's character by imposing sentences that exceeded the advisory terms but fell short of the maximum. Therefore, we find that the aggregate thirty-six-year sentence is not inappropriate in light of the nature of the offenses and North's character.

[22] The judgment of the trial court is affirmed.

Bradford, C.J., and Pyle, J., concur.

---

[5] We note, however, that North was only around twenty years old when he began molesting M.S., meaning that he was not long into adulthood when he began committing some of the most serious offenses there are and that he had not yet had many years to amass a criminal record.